## Hanna, survivor of McVay & Co., *versus* Wray.

1. Where one partner is dead, in a suit against the survivor for a claim against the firm, the plaintiff is not a competent witness, under the Act of April 15th 1869.

2. When a party to a thing or contract is dead and his rights have passed by his own act or that of the law to another representing his interest in the controversy, the survivor to that subject cannot testify to matters occurring in the life of the deceased party.

3. The rights and liabilities of a deceased partner under the partnership, devolve upon the surviving partner.

4. In the settlement of the partnership account of the survivor with the representatives of the deceased partner, the survivor would be entitled to credit for a judgment for a firm debt recovered against him without his collusion or neglect.

5. Whether plaintiff was competent under a special offer to testify as to matters between him and the surviving partner only, not decided.

6. Karns *v.* Tanner, 16 P. F. Smith 297, adopted.

October 7th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 134, to October and November Term 1873.

This case was an action of assumpsit, commenced March 19th 1866, by Robert Wray, Jr., against Ira B. McVay, C. B. McVay and James P. Hanna, partners as Ira B. McVay & Co. On the

[Hanna *v.* Wray.]

28th of April 1866, on motion of plaintiff, the name of C. B. McVay was stricken from the record.

In his affidavit of claim, the plaintiff averred that the defendants were bankers in Pittsburg ; that in April or May 1865, he sold them a promissory note, drawn by James McClelland, dated April 1st 1865 for $1000, payable in sixty days, to the order of William M. Dawson, endorsed by him and R. P. Gordon ; that the note when it became due, June 3d 1865, was in the possession of defendants, and no demand for payment on that day was made on Dawson, nor was any notice of non-payment given to the endorsers until the 5th of June 1865, and the endorsers were thereby discharged ; that plaintiff having received notice from the defendants that the note had been presented for payment and had not been paid, he believed that payment of the note had been duly demanded and the endorsers duly notified ; on the 10th of July 1865 he paid the defendants $1007.34 and " lifted" the note ; that McClelland is insolvent, that the other endorsers were solvent, and the amount of the note could have been collected from them, if they had not been released from their liability by the neglect of the defendants in not making proper demand and giving due notice of non-payment ; that he paid the amount due on the note under a mistake of the facts, and if he had known the facts he would not have paid the amount of the note to the defendants.

In their affidavit of defence, the defendants averred, amongst other grounds of defence, that they discounted the note with the express understanding with the plaintiff that they were to have no trouble nor incur any responsibility about it, and on the promise of the plaintiff that he would take care of it at maturity, and therefore they were not bound to have the note presented for payment on the day it became due nor to notify the endorsers ; nor did they undertake to do so ; that the plaintiff paid the money long after he knew or might have known of the irregularity of the protest, &c.

After the cause was at issue, Ira B. McVay died, and on the 8th of January 1867 his death was suggested on the record.

The case was tried June 9th 1873, before Stowe, J., the jury having been sworn in the issue against James P. Hanna only as surviving partner.

The plaintiff gave in evidence the note mentioned in his claim and then offered himself as a witness.

He was objected to on the ground that Ira B. McVay, one of the partners, was dead, and the plaintiff was therefore incompetent.

The plaintiff was admitted and a bill of exceptions sealed.

He testified to transactions and conversations between himself and Ira B. McVay, the deceased partner, in relation to the purchase or discount of the note ; and other matters in support of the allegations in his affidavit of claim.

[Hanna v. Wray.]

The plaintiff gave other evidence in support of his case; and the defendant gave evidence in answer to it.

No further statement of the evidence is necessary, the Supreme Court having decided the case solely on the question of the plaintiff's competency as a witness.

The verdict was for the plaintiff for $1485.82. The defendant took a writ of error and assigned for error, amongst others: admitting the plaintiff to testify.

*C. B. M. Smith* (with whom was *S. M. Raymond*), for plaintiff in error.—The plaintiff was incompetent to testify under the Act of April 15th 1869, Pamph. L. 30, 1 Br. Purd. 624, pl. 15, whose object was to produce perfect equality; which would not be if either party were dead; to remedy this the proviso was incorporated into the act; if the plaintiff here can testify, both the spirit and reason of the proviso would be nullified: McBride's Appeal, 22 P. F Smith 480; Karns *v.* Tanner, 16 Id. 297; Allum *v.* Carroll, 17 Id. 68. In an action against McVay's administrator, the representative of his estate, the plaintiff could not testify; the surviving partner being the representative of the partnership estate for whose liabilities McVay is responsible, maintains the same relation to him; any payment by the surviving partner can be recovered from the deceased partner's estate: Lindley on Partnership 642; Story on Partnership, sect. 219, 220; Parsons on Partnership 285; Collyer on Partnership 156, 157; Wright *v.* Hunter, 5 Vesey 792; Pearson *v.* Skelton, 1 M. & W. 504.

*W. W. Thomson* and *D. Reed*, for defendant in error, cited Given *v.* Albert, 5 W. & S. 333; 1 Greenleaf Evidence, sect. 522, 523; Brewster *v.* Sterrett, 8 Casey 115; Moore's Appeal, 10 Id. 411.

Chief Justice AGNEW delivered the opinion of the court, November 9th 1874.

There is but one question which we need consider—the competency of Robert Wray as a witness in his own behalf. He was called and permitted to prove a transaction, and the conversations between himself and Ira B. McVay, the deceased partner of the defendant.

The case turned upon the special arrangement, relating to the note out of which the controversy arose, made between himself and McVay. They were the acting parties in the transaction, and when McVay died, the truth, so far as it could be heard from his lips, died with him. Wray, therefore, stood upon a vantage ground, which he had gained by the death of McVay. This brings the case within the true intent and spirit of the exception contained in the Act of 15th April 1869, and directly within the decision in

Karns *v.* Tanner, 16 P. F. Smith 297. In that case the Act of 1869 was fully and carefully considered, and the interpretation then given to it has since been repeatedly recognised. It was then said that the proviso was the product of two thoughts; one that there were certain confidential relations to be protected against disclosure; the other, that there were cases of inequality where it would be unjust to open a door to one party that was closed by death against the other. In reference to the second class, it was said, it was evidently the true purpose of the proviso to close the mouth of him who is the adversary of the deceased assignor.

The conclusion reached was this, in the language of the opinion : " The true spirit of the proviso then seems to be that when a party to a thing or contract in action is dead, and his rights have passed, either by his own act or that of the law, to another, who represents his interest in the subject of controversy, the surviving party to that subject shall not testify to matters occurring in the lifetime of the adverse party, whose lips are now closed." Hence it was held there that Mrs. Tanner, who became the owner of the estate, the subject of controversy, by a sheriff's sale, after the death of Mr. Tanner, stood in the relation contemplated by the proviso, and that Mr. Tanner was the deceased assignor within the terms of the law.

That case, therefore, rules this, for here, by operation of law, the rights and the liabilities of McVay devolved upon Hanna, the surviving partner. There is clearly no difference in principle between a devolution of McVay's estate upon another, directly by law, on the happening of a certain event, and its devolution by a sale at law. In either case it is the act and operation of the law, really more direct in the former case than in the latter, which required certain legal instrumentalities, to wit, the executions, in order to produce the result.

Nor can it make any difference that it was only one-half of the subject of controversy that thus devolved upon the survivor, when, as here, the whole controversy rests on the transactions of the deceased partner. Hanna became accountable to the estate of McVay for one-half of the money received from the plaintiff, and liable for his partnership transactions, and was entitled to the testimony of McVay to defend his interest and that of the partnership, according to the spirit and intent of the proviso. But it is argued that the judgment against Hanna could not be given in evidence against the estate of McVay. This is a mistake. Clearly in the settlement of the partnership account of Hanna, as the surviving partner, with the legal representative of McVay, Hanna would be entitled to a credit for the payment of the judgment recovered against him as surviving partner, unless it could be shown that the judgment was recovered through his collusion or fraud, or his gross neglect. The simple question, therefore, was, whether the plaintiff should be permitted to recover against the partnership, in effect, through

[Hanna *v.* Wray.]

his own testimony, when the acting partner, who transacted the business, was dead, and the benefit of his testimony was lost to the partnership. It seems to us too clear that he should not.

The offer was not special to prove, by the testimony of the plaintiff, matters occurring between the plaintiff and Hanna. How far such a special offer would take the case out of the proviso it is unnecessary to determine now, for the plaintiff here was offered as a witness generally, and it was not proposed to confine his testimony to transactions between Hanna and himself; while in fact the general offer of himself as a witness was actually followed by a narration of the transactions between McVay and himself. For this error the judgment is reversed, and a *venire facias de novo* awarded.